TJOFLAT, Circuit Judge,
concurring specially:
I concur in the court’s judgment. I write separately because I believe that the district court’s judgment should be affirmed on a more limited basis than the one the court takes.
The central question in this appeal is whether SFM Holdings, Ltd. (“SFM”) has sufficiently pled that Banc of America Se *1341 curities (“BAS”) owed SFM the fiduciary duty to supervise those purporting to trade on its behalf. To me, the answer is no. The parties’ contracts plainly preclude the argument that BAS owed SFM the fiduciary duty alleged. I write separately because I believe that there is no need to go beyond the contractual language and the allegations in the complaint to affirm the district court’s judgment.
As the court correctly notes, the existence and scope of a fiduciary duty is determined by the relationship between parties. See generally, e.g., Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 536 (2d Cir.1999) (“Simply put, the fiduciary obligation that arises between a broker and a customer ... is limited to matters relevant to affairs entrusted to the broker.”) (internal quotation and citation omitted); Ward v. Atl. Sec. Bank, 777 So.2d 1144, 1147 (Fla.3d Dist.Ct.App.2001) (examining the “facts and circumstances” of the parties’ relationship to determine the existence of a fiduciary duty). And where, as here, the relationship is established by contract, the existence and scope of a fiduciary duty may be ascertained by examining the contractual terms. See Chipser v. Kohlmeyer & Co., 600 F.2d 1061, 1066-67 (5th Cir.1979).[1]
The agreement between SFM and BAS demonstrates that BAS did not have the fiduciary duty alleged in the complaint. Therefore, there is no need to delve into a discussion about the general roles of prime, executing, introducing, and clearing brokers. Whatever fiduciary obligations they may typically take on in the abstract, BAS did not assume those alleged here.
The complaint alleges BAS owed SFM the fiduciary duty to supervise third parties trading and managing its account[2] in order to prevent Lee and Shoreland from making unauthorized trading decisions in the SFM account; to notify SFM that Lee and Shoreland had made trades it claims were made without its consent; to notify SFM that it deemed those managing the account “untrustworthy”; to notify SFM that it ordered Lee to remove all accounts he managed — including the SFM account — out of BAS; and to take due care to confirm the authenticity of the forged transfer letter before transferring assets from the SFM account.
The parties’ agreement[3] demonstrates that supervising for SFM third parties managing its account was not a fiduciary duty entrusted to BAS. Indeed, their agreement expressly provides that it was not.
The PB Agreement plainly states that BAS would not act as a fiduciary:
[BAS] are not Advisors of Fiduciaries:
Customer acknowledges that none of the BofA Entities or their respective agents or affiliates is acting as a fiduciary for or an advisor to Customer in respect of this Agreement or any transaction it may undertake with BofA Entities; Customer understands that the BofA Entities are not acting as investment advisers or soliciting *1342 orders, that the BofA Entities are not advising it, performing any analysis, or making any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular invest.
(Appellee’s Br., Ex. A, ¶ 11)
What is more, the PB Agreement anticipates that the customer may utilize third parties to trade in or manage the customer’s account and makes clear that BAS would not supervise or pass judgment on such parties’ actions for the customer. For example, the PB Agreement provides that SFM may utilize other brokers, known as executing brokers, to place orders, in which case BAS would act as SFM’s prime broker. (Id. ¶ 3.) The PB Agreement also acknowledges that SFM may permit another type of third party (the “Advisor”) to have discretionary management authority over the account. (See, e.g., id. ¶¶ 3(d), 10(b).)
Under the PB Agreement, when third parties trade in or manage the account, they are acting on behalf of the customer and not as an agent of BAS. Additionally, as the PB Agreement explains, BAS will not supervise or otherwise provide advice to the customer regarding decisions made by these third parties. For executing brokers, the PB Agreement states:
As between Customer and BAS, the Executing Broker will be acting as an agent of Customer for the purpose of carrying out Customer’s instructions with respect to the purchase, sale and settlement of securities. Customer understands that no order may be legally accepted by BAS as Prime Broker from an Executing Broker with whom BAS has not entered into a Prime Brokerage Agreement.
(Id. ¶ 3(a).)[4] The PB Agreement consistently maintains that a third party making decisions for a customer’s account will not be supervised by BAS for the customer. It further provides that “[t]he BofA Entities shall not be held liable for any acts or omissions of an Executing Broker, subcustodian or other third party. All transactions effected with an Executing Broker or other third party for Customer shall be for the account of Customer and the BofA Entities shall have no responsibility to Customer or such third party with respect thereto,” (id. ¶ 10(b)), and BAS would “rely upon any authorized instructions ... which [BAS] reasonably belive[s] to be genuine and transmitted by authorized persons.” (Id. ¶ 10(f).)
There is nothing in the parties’ agreement to suggest that BAS owed the fiduciary duty alleged in the complaint.[5] Instead, as explained above, the agreement provides the opposite. It states that BAS *1343 would not be acting as a fiduciary and would not supervise, for the customer, third parties making decisions for the customer’s account.
No allegation in the complaint is sufficient to establish the alleged fiduciary duty in spite of the parties’ agreement. SFM has not alleged that BAS in fact took on a supervisory role in handling its account. It has not alleged that BAS agreed to do anything more than what the agreement provided. Indeed, the opposite is true. The complaint states that BAS never spoke or had any interaction with SFM and Melgen. Nor does mere knowledge about Kim, Lee, and Shoreland’s actions create a fiduciary duty where none otherwise existed. See McDaniel v. Bear Stearns & Co., Inc., 196 F.Supp.2d 343, 352-53 (S.D.N.Y.2002) (explaining that mere knowledge of fraud by an introducing broker does not create fiduciary obligations for a clearing broker).
Finally, the allegation that BAS was an “executing broker” is insufficient to create the fiduciary duty alleged. This term, as SFM uses it in the complaint, is meaningless. It does not tell us anything about BAS. It does not tell us that BAS had any additional responsibilities or performed any role not contemplated by the parties’ agreement in connection with Kim, Lee, and Shoreland’s activities. Critically, it does not tell us that BAS had a fiduciary obligation to supervise, for SFM, third parties managing the SFM account. The parties’ disagreement over whether a “prime broker” or an “executing broker” is like an “introducing broker” or a “clearing broker” is a red herring. No fiduciary duty existed because SFM and BAS agreed that there would be none.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

. It is undisputed that Kim, Lee, or Shoreland were directly responsible for the trading activity and asset transfer discussed in the complaint.

.I use the term agreement to refer collectively, unless otherwise indicated, to the agreements referred to in the complaint and attached to BAS's motion to dismiss and SFM's response to that motion, i.e., the Prime Broker Margin Account Agreement (“PB Agreement”) and the Institutional Account Agreement ("IA Agreement”), respectively.

. SFM argues that BAS had the fiduciary duty alleged in the complaint because there is no Prime Brokerage Agreement in the record that BAS entered into with Kim, Lee, or Shoreland. This argument is without merit. The PB Agreement provides that BAS will not be supervising any third parlies — not only executing brokers — trading or managing an account on a customer's behalf. The question of whether the third party is an executing broker or some other third-party advisor is accordingly irrelevant to the question of whether BAS had the alleged fiduciary duty to supervise.

. The IA Agreement language stating "Client appoints BAS as its agent for the purposes of buying and selling securities in its Cash Account" does not change this conclusion. (Appellee's Br., Ex. B, ¶ 3.) First, it is not clear that this provision is even applicable because SFM’s allegations relate to trades and transfers made in a Prime Broker Margin Account rather than a Cash Account. But critically, SFM does not claim that BAS failed to buy or sell securities consistent with its instructions. It claims that BAS should have prevented others purportedly trading on its behalf from making certain decisions.